UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT HEARD, WILLIAM JOHNSON,
JAMERO T. MOSES, and
ANTHONY NELSON,

        Plaintiffs,

v.

TOM FINCO, *et al.*,

        Defendants.
_____/

Case No. 1:13-cv-373

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by four state prisoners pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*. This matter is now before the court on a motion for summary judgment filed by defendants Thomas Finco, Michael Martin and Brad Purves (docket no. 24) and a cross-motion for summary judgment filed by plaintiffs Lamont Heard, William Johnson, Jamero Moses and Anthony Nelson (docket no. 29).

### I.     Plaintiffs' complaint

Plaintiffs filed their *pro se* complaint in the Eastern District of Michigan. *See* Compl. (docket no. 1). The action was transferred to this district on April 4, 2013. *See* Order (docket no. 6); Transfer documents (docket no. 7). Plaintiffs named three defendants in this action: Michigan Department of Corrections (MDOC) Deputy Director Thomas Finco; MDOC Special Activity Director Michael Martin; and MDOC Food Service Manager Brad Purves. In their complaint, plaintiffs allege that defendants violated their rights under the First and Eighth Amendments and

RLUIPA by failing to provide plaintiffs and other Muslim prisoners with 2,900 calories of food per day during Ramadan, as required by MDOC policy, and instead reducing their calories to approximately 1,000 to 1,500 calories per day. *See* Compl. For their relief, plaintiffs seek (1) a declaration that defendants' refusal to accommodate plaintiffs' request for adequate meals during Ramadan violated their rights under the First Amendment, Eighth Amendment and RLUIPA; (2) entry of an injunction requiring defendants to accommodate plaintiffs' request for adequate meals during Ramadan; and (3) monetary damages in excess of $25,000.00 from each defendant for the constitutional violation. *Id.* at p. 6.

## II. Motions for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

In their complaint, plaintiffs seek relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiffs also seek relief under RLUIPA, which provides in pertinent part that:

(a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

    (1) is in furtherance of a compelling governmental interest; and

    (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. Under § 3 of RLUIPA, 42 U.S.C. § 2000cc-2, "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief

against a government." *Id.* at § 2000cc-2(a). For purposes of a claim brought under § 2000cc-2(a), the term "government" is defined as: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law[.]" *Id.* at § 2000cc-5.

### B. Motion and Cross-Motion for summary judgment

#### 1. Background

In their motion, defendants seek summary judgment on four grounds: (1) plaintiff Heard's grievance is unexhausted; (2) plaintiff Heard's cause of action is time barred; (3) plaintiffs are not entitled to monetary damages for claims alleged against defendants in their official capacities; and (4) defendants have qualified immunity with respect to plaintiffs' § 1983 claims. Plaintiffs responded to the motion by filing a combined "Cross-motion for summary judgment and response in opposition to defendants' motion for summary judgment." *See* docket no. 29. Plaintiffs' response addressed defendants' four arguments raised in support of the motion for summary judgment, while their brief "cross-motion" sought summary judgment on their claims brought under the First Amendment, Eighth Amendment and RLUIPA. Plaintiffs' Brief (docket no. 30). Defendants raised the following arguments in their response to plaintiff's cross-motion: (1) there was no Eighth Amendment violation; (2) plaintiffs' request for monetary damages under RLUIPA should be denied; (3) plaintiffs have not alleged or shown personal involvement of defendants Purves and Martin sufficient to support a § 1983 claim against them; and (4) plaintiffs' request for injunctive relief is moot. *See* Defendants' Response (docket no. 39). Finally, plaintiffs' filed a reply, seeking to strike defendants' response as "non-responsive." *See* Reply (docket no. 48). Given

4

the overlaps in issues raised by the parties in their respective dispositive motion, the will address the issues raised in both dispositive motions in §§ II.B. 2 - 9, *infra*.

### 2. Eleventh Amendment immunity

Plaintiffs have sued defendants in both their individual and official capacities. Defendants seek dismissal of plaintiffs' claims to the extent that plaintiffs seek monetary damages against defendants in their official capacities. Plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Plaintiffs agree that defendants are not liable for monetary damages with respect to the official capacity claims brought under § 1983. *See* Plaintiffs' Response (docket no. 30 at p. 12). Accordingly, defendants are entitled to summary judgment with respect to plaintiffs' § 1983 claims for monetary damages in their official capacity.

### 3. Plaintiff Heard's Failure to Exhaust

#### a. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

5

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### b. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

6

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### c. **Plaintiff Heard failed to properly exhaust his claims**

Defendants contend that plaintiff Heard's lawsuit arose from a grievance MBP 09-08-01872-28c ("1872"), which lists the incident date as July 21, 2009. *See* Grievance No. 1872 (docket no. 14-1 at p. 21). Defendants' contention is supported by the record, because plaintiffs' complaint cited grievance no. 1872 as one of the grievances which raised the issues alleged in their complaint. *See* Compl. at ¶ 31. While this grievance was not attached to plaintiffs' complaint, it was attached as an exhibit to their subsequent motion for a preliminary injunction. *See* Grievance No. 1872 (docket no. 14-1). Based on this grievance, defendants contend that plaintiff Heard did not properly exhaust this claim. At Step III, the MDOC summarized the issues raised in the Step I grievance as raising the following claims: the proposal to add an Eid celebration at the end of Ramadan was denied; during Ramadan Muslims are not served 2,900 calories; the lights are off during the morning meals; and the food is cold. *Id.* at p. 20. The MDOC noted that the grievance was rejected at Step I as vague because the grievance did not identify any action that violated a MDOC policy or procedure and that plaintiff could not grieve the content of a policy or procedure except as it directly affected him. *Id.* The Step II respondent supported the Step I rejection. *Id.* At Step III, the MDOC investigator reviewed the record and determined: that the grievance was not attempting to grieve the content of any policy or procedure; that the issues presented were "clear"; and, that the previous "rejection as vague is not supported." *Id.* However, the MDOC denied the grievance and rejected it at Step II because it raised "very separate issues [related to Ramadan] which should have been addressed in separate grievances," and that "[t]he grievance identified code

7

has been changed to reflect a rejection due to multiple issues rather than a rejection due to being vague." *Id.*

In his response, plaintiff Heard presented a copy of a more recent grievance, LCF 2012-08-0863-09B ("863"), which he claims exhausted the issue. *See* Grievance No. 863 (docket no. 30-3 at pp. 5-6); Plaintiffs' Brief at pp. 9-10 (docket no. 30). The copy of Grievance No. 863, however, is illegible, being essentially a blank piece of paper from which it is impossible to determine what plaintiff grieved. In addition, there is no evidence that plaintiff Heard exhausted grievance no. 863 to Step III. Plaintiff Heard also refers to another grievance, LCF 12-08-0864-20e ("864"), which he admits is a "duplicative grievance" to grievance no. 863. Plaintiffs' Brief at pp. 9-10; Grievance No. 864 (docket no. 30-3 at pp. 8-9). Plaintiff Heard filed only copies of the Step II and Step III appeals of no. 864. There is no record of the what issue plaintiff Heard raised in the original grievance. Grievance No. 864 was rejected at Step II and Step III as duplicative of no. 863. Grievance No. 864 (docket no. 30-3 at pp. 8-9). Viewed in the light most favorable to plaintiff Heard, there is no evidence that he properly exhausted either grievance no. 1872, 863 or 864, that any of these grievances named a defendant in this action, or that any of the grievances raised the issues set forth in the complaint, which claims that LCF intended to provide less than 2,900 calories to prisoners who participated in Ramadan.

Plaintiff Heard has failed to properly exhaust a grievance against any of the defendants. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants' motion for summary judgment should be granted as to plaintiff Heard's claims.

### 4. Plaintiff Heard's claims are untimely

In the alternative, defendants contend that the Court should dismiss plaintiff Heard from this action because his allegations in grievance no. 1872 are time barred. In Grievance No. 1872, plaintiff claimed that the incident date was July 21, 2009. Clearly, plaintiff Heard's claim was untimely based upon that incident date. The docket sheet reflects that plaintiffs' complaint was filed stamped in the Eastern District on March 26, 2013. Under the prisoner mailbox rule[1] the Court will construe the complaint as filed on March 20, 2013, the date when the plaintiffs signed it. *See* Compl. (docket no. 1 at p. 6). The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). The three-years statute of limitations on that claim expired on July 21, 2012. Plaintiff Heard's complaint was filed long after that date. Defendants are entitled to summary judgment as to plaintiff Heard's First and Eighth Amendment claims brought pursuant to § 1983.

### 5. Qualified immunity

Plaintiffs' complaint alleged that defendants violated their rights under the First Amendment and Eighth Amendment because the caloric content of the meals served to prisoners participating in Ramadan did not equal the caloric content of the meals served to other prisoners. The allegations in plaintiffs' complaint referring to caloric content are as follows (in plaintiffs' words):

---

[1] Under the prisoner mailbox rule, a prisoner plaintiff's motion is considered filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a *pro se* prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted).

> 23. Michigan Department of Corrections provide those muslims that elect to participate in the fast two meals per day. One meal before the sun rise and another meal after the sun set.
>
> 24. Each facility has the option of choosing between serving a bagged meal or allowing the muslims that choose to fast to eat in the dining hall.
>
> 25. The bag meals do not meet MDOC mandated 2,900 calory in-take count.
>
> 26. The dining hall meals consist of 1000 to 1500 calory intake.
>
> 27. Most facilities choose to allow the Muslims to eat in the dining hall because bag meals cost more.
>
> \* \* \*
>
> 36. Islamic definition of fasting during Ramondon means abstaining from food and liquid during the day light hours.
>
> 37. Thus, Defendants could provide all of the mandated daily 2900 caloric intake by dividing it between the two meals.

Compl. at ¶¶ 23-27, 36-37.

This Court previously addressed plaintiffs' claim that the MDOC policy requires that prisoners receive 2,900 calories per meal, noting that MDOC Policy Directive 04.07.100 ("Offender Meals") does not specify a minimum caloric meal value. *See* Memorandum Opinion and Order Denying Plaintiffs' Motion for Preliminary Injunction at pp. 3-4 (July 8, 2013) (docket no. 21). In that order, the Court found that in light of information contained in defendant Purves' affidavit, meals containing between 2,400 and 2,600 calories meet plaintiffs' recommended caloric intake, noting that a registered dietician with the MDOC has determined that a daily caloric intake of 2,350 to 2,594 calories will not pose a health risk to healthy, moderately active males. *Id.* at p. 4. On July 10, 2013, the Court clarified its order after receiving a reply from plaintiffs which indicated that the Ramadan "bag menu meal option" to be used at LCF would provide only 1,149.2 calories

per day. *See* Order of Clarification (July 10, 2013) (docket no. 22). Based on this information, the Court clarified its earlier order to hold defendants to their representation that Muslim prisoners who observe Ramadan will be provided with at least 2,350 calories per day. *Id.*[2]

Defendants contend that they are entitled to qualified immunity with respect to plaintiff's First Amendment claims brought under § 1983. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231-33 (2009); *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011). The court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Defendants contend that they are entitled to qualified immunity because their actions were not objectively unreasonable in light of clearly established law. "The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits governments from 'abridging the freedom of speech' and 'prohibiting the free exercise' of 'religion.'" *Ward v. Polite*, 667 F.3d 727, 732 (6th Cir. 2012). The core of the guarantee of the First Amendment right to freely exercise one's religious beliefs is the right to practice any religion

---

[2] The Court may address the issue of the actual calorie count of the Ramadan 2013 meals in resolving plaintiffs' motion for contempt. *See* Plaintiffs' Motion for contempt (docket no. 23). If additional evidence comes to light in resolving that motion, it may be necessary to revisit plaintiffs' claims.

privately. *See Walker v. Mintzes*, 771 F.2d 920, 930 (6th Cir. 1985). While a prison inmate does not lose his or her right to exercise their religion by virtue of incarceration, "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." *Id.* at 929. As a result, restrictions to a prisoner's right to freely exercise his or her religion is permissible if it is reasonably related to a legitimate penological objective. *See Thornburgh v. Abbot*, 490 U.S. 401, 414-16 (1989); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350-53 (1987); *Turner v. Safley*, 482 U.S. 78, 92 (1987).

In order to find that a clearly established right exists, "the district court must find binding precedent by the Supreme Court, [the Sixth Circuit], the highest court in the state in which the action arose, or itself, so holding." *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999).

Plaintiff has not established that they have a clearly established right to receive 2,900 calories per day during Ramadan. Defendants identified three unpublished Sixth Circuit decisions which touch on various aspects of Ramadan meals. In *Alderson v. Pitcher*, No. 94-1254, 1994 WL 529852 (6th Cir. Sept. 28, 1994), the Sixth Circuit rejected the plaintiff's claim that during Ramadan, Muslim inmates should be served the same food as other inmates, affirming the district court's conclusion that the providing inmates with peanut butter and jelly sandwiches, fruit and milk at night during the month-long Muslim holiday of Ramadan, rather than letting Muslim inmates have the same food that was served to non-Muslim inmates during the day, was "an appropriate attempt to accommodate the Muslim prisoners' requirements during the Ramadan holiday." In *Mabon v. Campbell*, Nos. 98-5468 and 98-5513, 2000 WL 145177 at *3 (6th Cir. Feb. 1, 2000), the Court held

that "[p]laintiffs' complaint of delay in breakfast while segregated during the period of Ramadan does not rise to a constitutional violation." In *Jaami v. Compton*, No. 98-5055, 1999 WL 455374 at *1 (6th Cir. June 23, 1999), the Court found that the prisoner plaintiffs' claim that "the defendants served the plaintiffs cold breakfast during the Muslim holiday of Ramadan" was clearly frivolous.

In *Alexander v. Carrick*, 31 Fed. Appx. 176 (6th Cir. 2002), the Sixth Circuit declined to find a constitutional violation under the following facts: the prisoner's religious diet as a Nazerite required that he "eat nothing made of grapes;" the prisoner was placed in a close observation status after cutting his right forearm and advising prison personnel that he would engage in self-mutilating behavior; that while on close observation status the prisoner was given only "finger foods" in a paper bag (so as not to provide him with eating utensils that could be used as weapons); that defendants served him a bag lunch consisting of "an eight-ounce carton of milk, fruit, and a peanut butter and jelly sandwich," that the prisoner request a plain peanut butter sandwich; and that defendants would not make him a plain peanut butter sandwich. Ultimately, the prisoner filed a lawsuit against defendants claiming violation of his First Amendment right to have a "grape free diet." *Alexander*, 31 Fed. Appx. at 177. The Sixth Circuit affirmed a grant of qualified immunity, stating in pertinent part:

> The cases bear out that prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions. For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated.

*Id.* at 179. *See Colvin v. Caruso*, 605 F.3d 282, 290-91 (6th Cir. 2010) (same) (quoting *Alexander*, 31 Fed. Appx. at 179).

13

In addition, the Court has reviewed the additional authority pointed out by plaintiffs, *Hudson-Bey v. Martin*, No. 1:00-cv-389 (Order) (May 23, 2002) (Enslen, J.) (docket no. 51-1). *Hudson-Bey* involved an Eighth Amendment claim that the plaintiff was not sufficiently fed during Ramadan, receiving 764 fewer calories than the MDOC's policy of providing the daily necessary caloric intake of 2,900 calories. The *Hudson-Bey* order cited *Cunningham v. Jones*, 667 F2d 565, 566 (6th Cir. 1982), in which the Sixth Court affirmed a district court's finding on remand that a meal with an estimated caloric content of between 2,000 and 2,500 calories was sufficient to maintain a prisoner's health for the 15 days that a prisoner was in solitary confinement, and that such treatment did not violate his Eighth Amendment rights.[3] The court in *Hudson-Bey* denied defendants' claim of qualified immunity because there were factual disputes, in that particular case. Nevertheless, the legal reasoning set forth in the *Hudson-Bey* order supports a grant of qualified immunity in the present case. Notably, in *Hudson-Bey* the court stated that the decision in *Cunningham*, 667 F.2d at 566, "would have given a prison official reason to believe that a diet of 2,000-2,500 calories for a male prisoner was constitutionally sufficient."

The Court also notes that in another case involving the MDOC's 2013 Ramadan menu, *Welch v. Kusey*, No. 2:12-cv-13172 (Report and Recommendation) (E.D. Mich. July 3, 2013) (docket no. 26-4), adopted in Order (Sept. 24, 2013), the magistrate judge agreed with the defendants that "the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population." *Welch*, Report and Recommendation at p. 29.

---

[3] The underlying facts of the case are discussed at length in *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977), which vacated the district court's judgment and remanded for further proceedings.

14

Based on foregoing, the Court concludes that there is no "clearly established" law to support plaintiffs' claims that they are entitled to 2,900 calories per day during the Ramadan fast. While the Sixth Circuit's published decision in *Colvin* established that prison administrators must provide an "adequate diet without violating the inmate's religious dietary restrictions" and that such diet must be "sufficient to sustain the prisoner in good health," there is no clearly established law that a prisoner is entitled to 2,900 calories per day or that a prisoner is entitled to receive 2,900 calories during Ramadan. Accordingly, defendants are entitled to qualified immunity with respect to plaintiffs' claims brought under the First Amendment.

### 6. Plaintiffs' Eighth Amendment claims

Plaintiffs also allege that the meals provided during Ramadan 2013 were so inadequate as to constitute cruel and unusual punishment under the Eighth Amendment. In the context of prison conditions, the Eighth Amendment's Cruel and Unusual Punishment Clause "forbids conditions that involve the 'wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime.'" *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "To succeed in an Eighth Amendment challenge, [p]laintiff must establish that (1) a single, identifiable necessity of civilized human existence is being denied (objective prong) and (2) the defendant prison official acted with a sufficiently culpable state of mind." *Hadix*, 367 F.3d at 525, citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). With respect to the objective prong, "[t]he contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix*, 367 F.3d at 525, citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Extreme deprivations are required and only deprivations denying "the minimal civilized measure of life's necessities" are

grave enough to create a violation of the Cruel and Unusual Punishment Clause. *Hadix*, citing *Hudson v. McMcillian*, 503 U.S. 1, 9 (1992) and quoting *Rhodes*, 452 U.S. at 347. "Harsh and uncomfortable prison conditions do not automatically create such a violation." *Hadix*, 367 F.3d at 525. To establish an Eighth Amendment claim based upon an alleged inadequate diet, plaintiffs must demonstrate that they were denied "the minimal civilized measure of life's necessities." *Sims v. Michigan Department of Corrections*, 23 Fed. Appx. 214, 216 (6th Cir. 2001), citing *Rhodes*, 452 U.S. at 347 and *Cunningham*, 667 F.2d 565.

The Court previously addressed the adequacy of the Ramadan 2013 diet, and in the course of denying plaintiffs' motion for a preliminary injunction, determined that the MDOC's proposed menu would be adequate, consisting of between 2,350 and 2,594 calories. *See* Order of Clarification. When confronted with documentation suggesting that the diet might fall below that amount, the Court clarified that defendants were to provide plaintiffs at least 2,350 calories per during Ramadan 2013. *Id.* This menu would fall within the range of 2,000 to 2,500 calories as set forth by the Sixth Circuit in *Cunningham*, 667 F.2d 565. Defendants are entitled to summary judgment on this claim.

### 7. Plaintiffs' Eighth Amendment claims against defendants Purves and Martin

In the alternative, assuming that plaintiffs could assert an Eighth Amendment claim with respect to the Ramadan 2013 diet, defendants' Purves and Martin contend in their response to the cross-motion that plaintiffs' complaint is deficient because it fails to identify any personal involvement of these two defendants.[4] Defendants have briefed their claims as a motion to dismiss

---

[4] In their response to plaintiffs' cross-motion, defendants' Purves and Martin contend that plaintiffs' complaint is deficient because it fails to identify any personal involvement of these two defendants. Defendants have briefed their claims as a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

16

for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* Defendants' Response at pp. 7-10. Since plaintiffs seek summary judgment for the Eighth Amendment claim, the Court will address this legal challenge raised by defendants Purves and Martin.

Both defendants Purves and Martin hold supervisory positions at the MDOC. In their complaint, defendants allege that Purves is the Dietician and Food Service Manager at MDOC and that Martin is the Special Activity Director at the MODC. Compl. at ¶¶ 11-14. Plaintiffs do not claim that either of these defendants were on staff at LCF prior to Ramadan 2013. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Plaintiff does not allege that either of these supervisory defendants encouraged or directly participated in LCF's decision to serve bag lunches for Ramadan 2013. As defendants point out, MDOC Policy Directive 05.03.150 "Religious Beliefs and Practices of Prisoners" provides that the Deputy Director (Martin) authorizes "the development of a separate menu to meet the necessary religious dietary restrictions of a prisoner." *See* Policy Directive 05.03.150 ¶ QQ. With respect to defendant Purves, the Manager of Food Services for MDOC is only required to "maintain a list of approved religious menus" while Chaplain Michael Martin, the Special Activities

---

12(b)(6). *See* Defendants' Response at pp. 7-10.

Coordinator for CFA approves or denies a prisoner's request to "eat from a religious menu." *Id.* at ¶¶ RR and SS. Neither defendants' Martin or Purves are authorized to develop a Ramadan menu for either the entire MDOC or as served at a particular facility such as LCF. Plaintiffs have failed to allege or demonstrate personal involvement sufficient to impose liability on either defendant pursuant to § 1983. Thus defendants Purves and Martin are entitled to summary judgment with respect to plaintiffs' claims brought pursuant to § 1983.

### 8. Plaintiffs' claim for damages under RLUIPA

Defendants seek dismissal of plaintiffs' claim for monetary damages under RLUIPA because such damages are not available. *See* Defendants' Response at p. 6 (docket no. 39). While plaintiffs' complaint seeks monetary damages for the alleged constitutional violations, they do not seek damages for the alleged RLUIPA violation. *See* Compl. at p. 6. Accordingly, defendants' request should be denied.

### 9. Plaintiffs' claim for injunctive relief

This Court previously resolved plaintiffs' claim for injunctive relief, having directed defendants to provide plaintiffs at least 2,350 calories per day during the 2013 Ramadan observance. *See* Memorandum Opinion and Order (July 8, 2013); Order of Clarification (July 10, 2013).

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 24) be **GRANTED** and that plaintiffs' motion for summary judgment (docket no. 29) be **DENIED**. I further recommend that this action be **TERMINATED**.


Dated: February 25, 2014         /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).