UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAMONT HEARD, et al.,

    Plaintiffs,

v.                                        Case No. 1:13-CV-373

TOM FINCO, et al.,                   HON. GORDON J. QUIST

    Defendants.
_____/

**OPINION REGARDING (1) PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION CONCERNING RAMADAN 2014
AND (2) DEFENDANTS' MOTION FOR RELIEF FROM AN ORDER
PURSUANT TO FED. R. CIV. P. 60(b)(5)**

*Background*

Plaintiffs are prisoners incarcerated with the Michigan Department of Corrections (MDOC) at various facilities and are also practicing Muslims. Plaintiffs have sued Defendants, MDOC Deputy Director Thomas Finco, MDOC special Activity Director Michael Martin, and MDOC Food Service Manager Brad Purves, alleging that they violated Plaintiffs' rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, by failing to provide them adequate nutrition during the Islamic month of Ramadan, which lasts for 29 to 30 days.[1] (Dkt. # 1 at Page ID ## 2, 5.) "Observant Muslims fast between dawn and sunset during the thirty days of Ramadan." *Lovelace v. Lee*, 472 F.3d 174, 182 (4th Cir. 2006). They may resume eating and drinking after sunset until dawn the following day. (Dkt. # 1 at Page ID # 3.) Plaintiffs' claims concern the 2011 and 2012 Ramadan observances.

---

[1] Plaintiffs also alleged an Eighth Amendment claim, which the Court dismissed on March 31, 2014. (Dkt. # 59 at Page ID ## 708–09.) Plaintiffs have moved for reconsideration of the dismissal of their Eighth Amendment claim, which the Court will address in a separate order.

On June 14, 2013, Plaintiffs filed a Motion for Preliminary Injunction in which Plaintiffs requested that the Court order Defendants to provide Plaintiffs adequate nutrition during the 2013 Ramadan observance. Plaintiffs argued that because MDOC policy requires that inmates be provided 2,900 calories per day, Defendants should be required to provide Plaintiffs 2,900 calories per day during Ramadan. On July 8, 2013, the Court denied Plaintiffs' motion on the basis that Defendants had shown that the 2013 Ramadan menu would provide adequate nutrition to prisoners participating in the Ramadan fast. The Court also found that, contrary to Plaintiffs' assertions, current MDOC policy does not specify a 2,900 daily calorie requirement for prisoners. In particular, the Court noted:

> In their Response, Defendants note that, contrary to Plaintiff's assertion, MDOC Policy Directive 04.07.100, titled "Offender Meals," does not specify a minimum caloric meal value. Defendant Purves explains in his affidavit that the MDOC's Statewide Standard Menu provides prisoners 2,600 calories per day. (Purves Aff. ¶ 4, Defs.' Resp. to Pls.' Mot. Ex. 2.) According to Purves, the MDOC sets its caloric intake level based on Dietary Reference intake values approved by the National Research Council (NRC). (*Id.* ¶ 3.) The NRC recommends a daily caloric intake of 2,600 to 2,800 for moderately active men in their 20s; a daily caloric intake of 2,400 to 2,600 for moderately active men in their 30s and 40s; and a daily caloric intake of 2,200 to 2,400 for moderately active men after 50. (*Id.*) The MDOC specifies 2,600 calories per day because that number meets the needs of 95% of male prisoners in the general population. (*Id.* ¶ 4.) Purves states that all Plaintiffs are between 36 and 46 years of age. (*Id.*) Thus, when Plaintiffs are moderately active, a daily caloric intake of between 2,400 to 2,600 calories meets their recommended caloric intake.
>
> Purves also states that the Ramadan meal plan Plaintiffs attach to their Motion is not the meal plan that will be used for the 2013 Ramadan observance. Instead, the 2013 meal plan offers four different meal options to prisoners who choose to fast, and provides a daily caloric content ranging from 2,350 to 2,594 calories. (*Id.* ¶ 6.) Purves also confirms that a registered dietician with the MDOC has determined that a daily caloric intake of 2,350 to 2,594 calories will not pose a health risk to healthy, moderately active males. (*Id.* ¶ 7.)
>
> In light of the information set forth in Purves's affidavit, Plaintiffs have failed to demonstrate that they are likely to suffer irreparable harm absent injunctive relief. First, Plaintiffs' motion is based on an out-of-date meal plan that will not apply to the 2013 Ramadan observance. Second, Defendants have shown that the meal plan for the 2013 Ramadan observance provides between 2,350 and 2,594 calories per day, which substantially meets the recommended calorie requirements for most moderately active prisoners—defined as "'a lifestyle that includes physical activity equivalent to walking

2

>   about 1.5 to 3 miles per day at 3 to 4 miles per hour, in addition to the light physical activity associated with typical day-to-day life.'" (Purves Aff. ¶ 3 (quoting 2010 Dietary Guidelines for Americans).)  Third, Plaintiffs wholly fail to show that they will suffer any harm from a slight reduction in their daily caloric intake during the 30-day Ramadan observance. . . .

(Dkt. # 21 at Page ID ## 178–79.)

On July 10, 2013, the Court issued an Order of Clarification Regarding Memorandum Opinion and Order Denying Plaintiffs' Motion for Preliminary Injunction, which noted that, since the entry of the July 8, 2013 Memorandum Opinion and Order, Plaintiffs had submitted information that "appear[ed] to be reasonably accurate" and suggested that the facility in which Plaintiffs were incarcerated had or would be providing Ramadan meals averaging only approximately 1,149.2 calories per day. (Dkt. # 22 at Page ID # 182.)  Because Plaintiffs' evidence was contrary to Purves' representations and, if true, would have sufficed to show irreparable harm, the Court ordered Defendants to provide Plaintiffs at least 2,350 calories per day during the 2013 Ramadan observance. (*Id.* at Page ID ## 182–83.)

Subsequently, Plaintiffs moved to hold Defendants in contempt on the ground that the actual 2013 Ramadan meals provided approximately 600 fewer calories than Defendants had represented. (Dkt. # 23.)  After reviewing the parties' evidence pertaining to the contempt motion, the Court concluded that Defendants' calorie figures were likely more accurate than Plaintiffs' figures. Nonetheless, the Court noted that Defendants' own evidence showed that, on several days, the meals Plaintiffs received provided less than the 2,350 calories specified in the July 10, 2013 Order.  The Court rejected Defendants' explanation that the 2013 Ramadan menu complied with the July 10, 2013 Order because it provided a daily average of 2,361.246 calories per day, on the basis that Purves had represented that the 2013 Ramadan meal plan would provide a minimum of 2,350 per day rather than a daily average of 2,350 calories. (Dkt. # 58 at Page ID # 698.)  Accordingly, the Court found Defendants in contempt and awarded Plaintiffs compensation. (Dkt. # 70.)

*Motions Before the Court*

The Court addresses two pending motions in this Opinion. First, Plaintiffs have filed a Motion for Preliminary Injunction, in which they request that the Court order Defendants to provide 2,900 calories per day during the 2014 Ramadan observance, as specified by MDOC policy. Citing Defendants' failure to comply with the July 10, 2013 Order for the 2013 Ramadan observance, Plaintiffs also request that the Court appoint a monitor to ensure that Defendants comply with their legal obligation to provide Plaintiffs adequate nutrition during Ramadan. Plaintiffs state that a monitor is particularly appropriate for the current Ramadan observance because the MDOC has contracted with a private company, Aramark, to perform its food service operations.

Defendants have filed a Motion for Relief from the July 10, 2013 Order, in which they request that the Court relieve them of any obligation to provide at least 2,350 calories per day and instead permit them to provide Plaintiffs an average of 2,350 calories, based on a two-week menu period. Defendants argue that such request is reasonable because the MDOC formulates its menus based on average calorie counts over a two-week cycle, and this practice is healthy and well-accepted.

Finally, pursuant to 28 U.S.C. § 517, the United States has filed a Statement of Interest in furtherance of its enforcement authority under RLUIPA. *See* 42 U.S.C. § 2000cc-2(f). The United States advises that, through its Statement of Interest, it seeks to assist the Court in determining whether the Defendants have violated RLUIPA by failing to provide adequate nutrition to Muslim prisoners observing Ramadan. The United States recommends the appointment of a monitor in the event that the Court finds a RLUIPA violation and issues an injunction, to ensure that the injunctive relief is properly implemented.

*Discussion*

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v.*

4

*Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Moreover, because Plaintiffs seek injunctive relief against prison officials concerning a matter of prison administration, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).

In ruling on a motion for a preliminary injunction, a court considers four factors: "(1) whether the plaintiffs are likely to succeed on the merits; (2) whether the plaintiffs will suffer irreparable harm in the absence of an injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) whether the issuance of the injunction is in the public interest." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). These are factors to be balanced, not prerequisites that must be met. *See Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). A district court need not make specific findings on each of the four factors if fewer factors are dispositive of the issue. *See In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

Section 3 of RLUIPA, which addresses prisoners' religious beliefs, provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Courts entertaining complaints under § 3 should apply 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Coleman v. Governor of Mich.*, 413 F. App'x 866, 875 (6th Cir. 2011) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S. Ct. 2113, 2123 (2005)). The Sixth Circuit has held that an action is a substantial burden if it "force[s] an individual to choose between 'following the precepts

5

of [his] religion and forfeiting benefits,' or when the action in question place[s] 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404, 83 S. Ct. 1790, 1794 (1963), and *Thomas v. Review Bd. of In. Emp't Sec. Div.*, 450 U.S. 707, 718, 101 S. Ct. 1425, 1432 (1981)). "[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious item or observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 536 U.S. __, 131 S. Ct. 1651 (2011). Inadequate nutrition may impose a substantial burden on a prisoner's religious practices. *See Heard v. Caruso*, 351 F. App'x 1, 13 (6th Cir. 2009).

Initially, the Court considers Plaintiffs' assertion that MDOC policy provides that they are entitled to 2,900 calories per day. The Court previously addressed this issue in its July 8, 2013 Order denying Plaintiff s' Motion for Preliminary Injunction, noting that MDOC Policy Directive 04.07.100 does not specify a particular number of calories, but instead relies on the Dietary Reference intake values approved by the National Research Council. (Dkt. # 21 at Page ID # 178.) The Court found that the MDOC has determined that based on those values, 2,600 calories per day is appropriate because that level of nutrition meets the dietary requirements of 95% of the male prisoner general population based on a moderately active lifestyle. (*Id.* at Page ID ## 178–79.) Thus, even if Plaintiffs were not participating in the Ramadan observance, MDOC policy would provide them only 2,600 calories, not 2,900 calories.

The Court previously concluded that a Ramadan menu that provided at least 2,350 calories per day—which Defendants state will be provided again for the 2014 Ramadan observance—substantially meets the calorie requirements set by the MDOC and appears to provided a nutritionally-adequate diet. While the Court did not expressly consider whether that level of nutrition substantially burdened

6

Plaintiffs' exercise of their religion in the context of RLUIPA, it now concludes that this level of calories does not substantially burden Plaintiffs' participation in the Ramadan fast. At 2,350 calories, a prisoner participating in the Ramadan fast will receive 90% of the calories he would otherwise receive when not participating in the fast. While receiving 250 fewer calories—the approximate equivalent of an energy bar or two pieces of fruit—per day for 30 days might make Plaintiffs' participation in the Ramadan fast more difficult or less enjoyable, there is no indication that a diet of 2,350 calories would force Plaintiffs to refrain from participating in, or abandon, the Ramadan fast. In fact, this daily number of calories is 150 more than the 2,200 calories the court ordered in *Couch v. Jabe*, No. 7:05-cv-642 (W.D. Va. Sept. 22, 2006) (dkt. # 6 at Page ID #513) (ordering "that the defendants, between sunset and dawn during the 2006 Ramadan period beginning September 23, shall daily provide Couch with food items containing approximately 2,200 calories"), which Plaintiffs cite in their brief.[2] Moreover, although Plaintiffs complain about the ill effects they suffer during Ramadan—anger, headaches, decreased energy, dizziness, etc.—as a result of lack of proper food, it is questionable whether additional calories would alleviate them. After all, a Ramadan observant foregoes food and drink for substantial periods of time each day—as long as fifteen hours at a time when Ramadan occurs during the summer months. Thus, regardless of the amount of calories consumed between sunset and sunrise, it is unsurprising that Plaintiffs experience abnormal physical symptoms during the fast. *See* J. B. Leiper *et al.*, *Effects on Health of Fluid Restriction During Fasting in Ramadan*, 57 European J. of Clinical Nutrition (2003), available at http://www.nature.com/ejcn/journal/v57/n2s/full/1601899a.html (noting that "[a] frequently cited problem of Ramadan fasting is an increased incidence of headaches"); *French v. Md. Div. of Corr.*, CCB-11-2142, CCB-11-3301, 2013 WL 1104995, at *7 (D. Md. Mar. 15,

---

[2] The MDOC does not explain why it does not simply provide prisoners observing Ramadan the same 2,600 calories per day that it normally provides other prisoners. *See Garnica v. Wash. Dep't of Corr.*, 965 F. Supp. 2d 1250, 1262 (W.D. Wash. 2013) ("According to Mr. Carney, the calorie level for Ramadan was set at 2700 calories per day to stay within DOC guidelines of 2700 to 3000 calories per day, a range which is well above USDA Dietary Reference Intake recommendations.").

2013) ("The court does not doubt that fasting, which includes the skipping of meals during the day, may lead to some weight loss or the intake of fewer calories relative to non-fasting inmates, but those are anticipated effects of the practice of fasting.").

Defendants' motion raises the question of whether it is sufficient to provide Plaintiffs with an average of 2,350 calories per two week cycle during Ramadan 2014, rather than with 2,350 on a daily basis. As a point of clarification, while the Court's prior contempt order might suggest that the Court would answer no, the contempt was imposed because Defendants failed to do what they told the Court they would do (provide a minimum of 2,350 calories each day), and not because they provided an average of 2,350 calories.

In support of their motion, Defendants present an affidavit from Norma Killough, RD, a registered dietician employed by the MDOC. Ms. Killough states that all MDOC menus are designed to comply with the nutritional and caloric recommendations set forth in the *Dietary Reference Intakes: The Essential Guide to Nutrient Requirements*, which are "a common set of reference values for a healthy population based on the relationships between nutrient intakes and health or the prevention of disease." (Dkt. # 95-1 at Page ID # 939.) Ms. Killough also states that the MDOC follows the current *Dietary Guidelines for Americans*, issued by the United States Departments of Health and Human Services and Agriculture, for menu planning. (*Id.*) Because the *Dietary Guidelines* recommends an eating pattern that meets nutrient needs over time at an appropriate calorie level, the MDOC plans its menus to meet nutrient and caloric needs over a two-week menu cycle rather than individual days. Thus, ordinarily, "[t]he nutritional and caloric content of the meals planned will fluctuate daily because the nutrient density of the food items will vary from day to day." (*Id.* at Page ID ## 939–40.)

Based on the foregoing, the Court concludes that providing prisoners participating in the Ramadan fast an average of 2,350 calories over a two-week period is consistent with sound nutritional practices and will not adversely affect prisoners' health. In fact, it is reasonable to assume that most

people do not consume a set number of calories per day, but vary the amount of calories each day. Thus, the Court will grant Defendants' motion.

Based on the foregoing, the Court concludes that Plaintiffs have not shown irreparable harm, and therefore, are not entitled to a preliminary injunction. For the same reasons, the Court will not appoint a monitor. The Court does have some concerns, however, about Defendants' follow-through on their representations, in light of the fact that the MDOC is using a private food service company to furnish prisoner meals. Accordingly, the Court will order Defendants to provide the Court a copy of the 2014 Ramadan menu and, on a weekly basis, a sworn statement from a representative at Plaintiffs' facilities confirming that Plaintiffs were served the food items listed on the 2014 Ramadan menu and identifying any actual variations and the calorie content of such.

### *Conclusion*

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Preliminary Injunction and grant Defendants' Motion for Relief From an Order.

An Order consistent with this Opinion will enter.


Dated: June 27, 2014         /s/ Gordon J. Quist
                             GORDON J. QUIST
                             UNITED STATES DISTRICT JUDGE