UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAMONT HEARD, et al.,

      Plaintiffs,

v.                                                         Case No. 1:13-CV-373

TOM FINCO, et al.,                            HON. GORDON J. QUIST

      Defendants.

_____/

**MEMORANDUM ORDER: (1) GRANTING PLAINTIFFS HEARD'S
AND JOHNSON'S MOTION TO HOLD DEFENDANTS IN CONTEMPT
FOR VIOLATING THE COURT'S JUNE 27, 2014 ORDER (Dkt. # 124);
(2) DENYING PLAINTIFFS' MOTIONS FOR RULE 11 SANCTIONS
(Dkt. ## 169, 175, 178); (3) GRANTING PLAINTIFFS HEARD'S AND JOHNSON'S
MOTIONS TO SUPPLEMENT (Dkt. ## 158, 162); and (4) DISMISSING
PLAINTIFFS' OBJECTION TO SWORN STATEMENTS (Dkt. # 115)**

BACKGROUND

Plaintiffs are prisoners incarcerated with the Michigan Department of Corrections (MDOC) at various facilities and are also practicing Muslims. Plaintiffs have sued Defendants, alleging that they have violated Plaintiffs' rights under the First Amendment, the Eighth Amendment[1], and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* by failing to provide them adequate nutrition during the Islamic month of Ramadan. Because the background of this case is set forth in extensive detail in the Court's prior opinions and orders, the Court will recount only those facts that are pertinent to the instant motions.

On June 14, 2013, shortly after Plaintiffs filed this case, Plaintiffs filed a motion for preliminary injunction requesting that the Court order Defendants to provide Plaintiffs adequate nutrition during the 2013 Ramadan observance. (Dkt. # 14.) The Court denied Plaintiffs' motion on the basis that Defendants had shown that the 2013 Ramadan menu would provide adequate nutrition to prisoners such

---

[1] The Eighth Amendment claim is currently on appeal to the Sixth Circuit.

as Plaintiffs, who planned to participate in the 2013 Ramadan fast. (Dkt. # 21.) On July 10, 2013, the Court issued an Order of Clarification ordering Defendants to provide Plaintiffs 2,350 calories per day during the 2013 Ramadan observance, as Defendants represented they would do. (Dkt. # 22.) Prior to the end of the Ramadan observance, Plaintiffs filed a motion to hold Defendants in contempt for failing to provide Plaintiffs at least 2,350 calories per day during Ramadan. Following a hearing on Plaintiffs' motion, the Court entered an Order holding Defendants in contempt and ordering Defendants to pay each Plaintiff $200 as compensation for damages caused by Defendants' noncompliance. (Dkt. # 70.) Although Defendants argued that they had complied with the Order of Clarification by giving Plaintiffs an average of 2,350 calories per day, the Court found that Defendants had represented that they would provide Plaintiffs a minimum of 2,350 calories per day and had not done so.

On May 28, 2014, Plaintiffs filed a second motion for a preliminary injunction, requesting that the Court order Defendants to provide Plaintiffs 2,900 calories per day during the 2014 Ramadan observance. (Dkt. # 87.) On June 16, 2014, Defendants filed a motion for relief from the Court's July 10, 2013 Order of Clarification, requesting that they be permitted to provide Plaintiffs an *average* of 2,350 calories per day over a two-week period. (Dkt. # 94.) On June 27, 2014, the Court entered an Opinion and accompanying Order denying Plaintiffs' motion for a preliminary injunction and granting Defendants' motion for relief from the July 10, 2013 Order. (Dkt. ## 104, 105.) As part of its ruling, the Court determined that providing Plaintiffs an average of 2,350 calories per day would not substantially burden Plaintiffs' exercise of their religion. (Dkt. # 104 at Page ID##994–95.) However, the Court was concerned "about Defendants' follow-through on their representations [about the number of calories that Plaintiffs would receive]" and therefore required Defendants to submit sworn statements on a weekly basis confirming that Plaintiffs were actually served the food items listed on the 2014 Ramadan menu and identifying any actual variations and the calorie content of such. (*Id.* at Page ID#997.)

Pursuant to the Court's June 27, 2014 Order, Defendants submitted their first sworn statements on July 7, 2014. (Dkt. # 109.) Patricia Popoff provided an affidavit regarding Lakeland Correctional Facility, David Mastaw provided an affidavit for the Kinross Correctional Facility, and Robert Beaulieu provided an affidavit for the Chippewa Correctional Facility. Popoff said that from June 28, 2014 through July 5, 2014, all of meals were served as listed. Mastaw said that for the same period, no food items were omitted, although one was added on June 30. Beaulieu stated that all of the food items were served, except that a high fiber bran cake that was omitted from the breakfast on June 29, 2014 was provided in addition to the food served for breakfast the following day. According to all three affiants, the information recited was provided by Aramark, MDOC's contract food service provider.

On July 14, 2014, Defendants submitted their next set of affidavits, all of which were based on information provided by Aramark. (Dkt. # 110.) Popoff stated that all meals were served as listed for the period of July 6 through July 12 at the Lakeland facility, except for four instances in which certain food items were substituted for listed items, resulting in a net increase of 502 calories. Mastaw stated that all of the listed items were served at the Kinross facility, and Beaulieu stated that all listed items were served at the Chippewa facility, except for one instance in which the replacement item resulted in a net increase of 50 calories.

Defendants submitted their third set of affidavits on July 21, 2014, based on information provided by Aramark. (Dkt. # 114.) Popoff stated that from July 13 through July 19, all items listed were served at the Lakeland facility except on five occasions, for which the substituted food items resulted in a net increase of 560 calories. Mastaw and Beaulieu stated that all of the listed food items were served, without exception, at the Kinross and Chippewa facilities.

On July 28, 2014, Defendants submitted their final set of affidavits, for the period of July 20, 2014 through July 27, 2014, based on information provided by Aramark. (Dkt. # 119.) Popoff and Kimberly Atkinson, representing the Kinross facility, stated that all of the items listed on the Ramadan

menu were served, without exception, at the Kinross and Lakeland facilities. Beaulieu stated that all of the items listed on the menu were served at the Chippewa facility, except that on one occasion 3 diet jelly pouches were served in place of the regular jelly pouch, resulting in no net change in calories.

## DISCUSSION

**I.     Plaintiffs Heard's and Johnson's Motion for Contempt and Motions to Supplement**

Plaintiffs Heard and Johnson have filed a motion to hold Defendants in contempt for violating the June 27, 2014 Order for failing to provide them a daily average of 2,350 calories during the 2014 Ramadan observance. In connection with their motion for contempt, Plaintiffs have filed two motions to submit supplemental supporting materials. Both motions to supplement, which Defendants have not opposed, will be granted.

It is well established that courts have the inherent power to manage and control proceedings before them. *See Brown v. City of Upper Arlington*, 637 F.3d 668, 671 (6th Cir. 2011) ("Federal courts have broad contempt power, which exists for the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts." (internal quotations omitted)). "'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991) (quoting *Anderson v. Dunn*, 6 wheat. 204, 227 (1821)); *see also Shillitani v. United States*, 384 U.S. 364, 370, 86 S. Ct. 1531, 1535 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

In order to hold a litigant in civil contempt, the moving party must establish, through clear and convincing evidence, a prima facie case that the contemnor "violated a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340

F.3d 373, 378 (6th Cir. 2003) (citation omitted). "The order in question must be 'definite and specific,' and 'ambiguities must be resolved in favor of persons charged with contempt.'" *United States v. Conces*, 507 F.3d 1028, 1042 (6th Cir. 2007) (quoting *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)). Once the movant makes its prima facie showing, the burden shifts to the alleged contemnor to produce evidence that it was presently unable to comply with the court's order. *Elec. Workers Pension Trust Fund.*, 340 F. 3d at 379 (citing *United States v. Rylander*, 460 U.S. 752, 757, 103 S. Ct. 1548, 1552 (1983)). A defendant may satisfy this burden by showing "categorically and in detail why [it] is unable to comply with the court's order." *Id.* at 379 (citation omitted). "Good faith is not a defense in civil contempt proceedings. Likewise, wilfulness is not an element of civil contempt, but the state of mind of the contemnor is relevant only in the consideration of sanctions." *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (citations omitted).

Plaintiffs Heard and Johnson have carried their initial burden of producing clear and convincing evidence that they were not provided certain items listed on the Ramadan menu and that substitute food items were not provided. (Dkt. # 154-1 at Page ID##1422–34.) In their response, Defendants argue that Plaintiffs dispute Defendants' affidavits. Defendants provide an affidavit from Beaulieu and an affidavit from Robert Autore, Aramark's food service director at the Chippewa facility, to explain the basis of the information Beaulieu included in his affidavits submitted to the Court and to explain the process that Aramark used to prepare and serve the Ramadan trays and bagged meals. Beaulieu explains that he "had no personal involvement in the preparation of meals provided to prisoners during Ramadan," and that he obtained the information provided in his affidavits "through weekly meetings with Mr. Autore for the sole purpose of completing the affidavits [he] submitted." (Dkt. # 145-2 at Page ID#1327.) In his affidavit, Autore explains that Aramark oversees prisoner workers who prepare the meals and deposit the appropriate food items into a sealed bag or place them on a styrofoam tray. (Dkt. # 145-3 at Page ID#1329.) The prisoner workers then load the food items onto carts, and Aramark inspects the

5

bags/trays periodically to ensure that all of the appropriate food items are included in the bags and on the trays. Aramark also confirms that the appropriate number of bags and trays have been prepared. The meals are then secured in refrigerated coolers, and later distributed by prisoner workers supervised by corrections officers. (*Id.* at Page ID#1330.) Autore also states that on occasions when there was an insufficient supply of a particular food item, a substitute food item of the same or greater nutritional value would be provided. Finally, Autore states that when a prisoner complained of missing food, Aramark would attempt to replace the missing food item as quickly as possible. (*Id.*) Defendants contend that in light of the process Aramark used to distribute food, it was reasonable for them to be skeptical of Plaintiffs' claims that they were missing food items. In addition, Defendants note that Aramark disputed several of Plaintiff Heard's claims that he was missing food.

The June 27, 2014 Order acknowledged that there may be instances in which food items on the Ramadan menu would be unavailable and thus, not provided, but that Defendants (and those actually providing food services, including Aramark) would be expected to provide substitute food items of the same or greater nutritional value in those instances. It is therefore not unreasonable to expect that, on occasion, a specified food item would not be provided, and the Court recognizes that, from time to time, considering the number of meals being served, ordinary error or inmate deceit could occur. However, Plaintiffs' filings show that food items were missing on more than a few occasions, and that substitute food items were not provided. In fact, Plaintiffs have presented, in addition to their own affidavits, step III grievance responses, issued after a complete investigation, concluding that Plaintiffs' claims of missing food items (and in one instance, an entire meal) without substituted items were supported. Moreover, this appears to have been an ongoing problem during the 2014 Ramadan observance, at least at the Chippewa facility. The problem could have easily been addressed by providing substitute food items. Although Autore states in his affidavit that Aramark would attempt to replace missing items when they received notice that items were missing, the grievance responses that Plaintiffs have

6

submitted show that this was not the case. For example, the October 2, 2014 step II grievance response to Plaintiff Heard's grievance URF 14072393 09Z stated:

> **Findings:** Staff has confirmed the prisoner was shorted two slices of whole wheat bread on 7/25/14. However, it appears no specific action was taken to provide the grievant with the shorted items. The grievant requested as resolution that the incident be reported in the Ramadan food service report.
>
> **Conclusion:** There is no Ramadan food service report, however, the shortage has been recorded as requested by the grievant and, therefore, this grievance is considered **RESOLVED**. In addition, MDOC staff and Aramark staff have been instructed that when any future food portions are confirmed as missing they must provide a make-up portion (or portions) to the prisoner at that time or as near to that time as is practicable (e.g., on the next meal tray or with a meal on the next day).

(Dkt. # 158-2 at Page ID#1451.) This was not the only occasion a Plaintiff was shorted food without response from Aramark. (Dkt. # 154-1 at Page ID#1422 ("Clearly this prisoner [Heard] is missing several items in his food trays and the problem is not getting resolved. If a Aramark employee was present during the time Ramadon (sic) meals were being served these errors could be resolved on site."); Dkt. # 154-1 at Page ID #1423 ("Clearly this prisoner [Heard] is missing several items in his food trays and the problem is not getting resolved. If a Aramark employee was present during the time Ramadon [sic] meals were being served these errors could be resolved on site."); Dkt. # 154-1 at Page ID#1424 ("The grievant should have received his aloted [sic] meal noted on the menu. This grievance will be forwarded to Aramark food service satff (sic) to correct for future purposes. Prsisoner (sic) Johnson wishes to go to step Two on this complaint."); Dkt. # 154-2 ("This prisoner should have received the 2 pieces of glazed coffee cake as the menu stated. This will be forwarded to the Aramark food service staff to correct for future purposes. Prisoner Heard wants to go to step II."); Dkt. # 154-2 at Page ID# 1426 ("The grievant should have received his aloted (sic) meal noted on the menu. This grievance will be forwarded to Aramark food service staff to correct for future purposes. Prisoner Heard wishes to go to step Two on this complaint."); Dkt. # 154-2 at Page ID# 1427 ("Prisoner states that he was not given the regular beverages on his evening Ramadan tray. I spoke with prisoner Johnson. I didn't receive a

statement from Aramark. I find merit in prisoner Johnsons (sic) grievance."); Dkt. #154-3 at Page ID# 1428 ("Prisoner states that he was not given the 2 slices of bread on his evening Ramadan tray. I spoke with prisoner Johnson. I didn't receive a statement from Aramark. I find merit in prisoner Johnsons (sic) grievance."); Dkt. # 154-3 at Page ID#1429 ("The prisoner should have received the 2 pieces of glazed coffee cake as the menu stated on 7/15 and 7/17/2014. This will be forwarded to Aramark food service staff to correct for future purposes. Prisoner Heard wants to go to step II."); Dkt. # 154-3 at Page ID#1430 ("The grievant should have received his aloted (sic) meal noted on the menu. This grievance will be forwarded to Aramark food service staff to correct for future purposes. Prisoner Johnson wishes to go to step Two on this complaint."); Dkt. # 154-4 at Page ID#1431 ("The grievant should have received his aloted (sic) meal noted on the menu. This grievance will be forwarded to Aramark food service staff to correct for future purposes. Prisoner Johnson wishes to go to step Two on this complaint."); Dkt. # 154-4 at Page ID#1432 ("The grievant should have received his aloted (sic) meal noted on the menu. This grievance will be forwarded to Aramark food service staff to correct for future purposes. Prisoner Johnson wishes to go to step Two on this complaint."); Dkt. # 154-4 at Page ID# 1434 ("This grievant should have received his aloted (sic) meal noted on the menu. This grievance will be forwarded to Aramark food service staff to correct for future purposes. Prisoner Johnson wishes to go to step Two on this complaint.").) Defendants do not dispute any of this. In this Court's judgment, Plaintiffs' evidence of favorable step III grievance findings constitutes clear and convincing evidence.

Based on the foregoing, the Court concludes that Defendants should be held in civil contempt of the June 27, 2014 Order. Given that Plaintiffs received most of their food items, the Court finds that a substantial award of compensation is not warranted. Accordingly, the Court will award Plaintiffs Heard and Johnson $250 each for damages resulting from Defendants' contempt. In addition, although Plaintiffs Nelson and Moses have not moved for contempt, the Court has reviewed their affidavits and

concludes that they also constitute clear and convincing evidence that Defendants failed to comply with the June 27, 2014 Order as to Plaintiffs Nelson and Moses. In their affidavits, Plaintiffs Nelson and Moses describe several instances in which they did not receive listed food items and were not given substitute items. (Dkt. # 111 at Page ID#1051; Dkt. # 115-1 at Page ID#1086.) Although Defendants argue that the affidavits they submitted create a question of fact, Defendants are mistaken. As noted above, the information from Aramark, which the Popoff and Mastaw affidavits recite, does not provide a credible basis to dispute Plaintiffs' assertions, because there is no indication that the Aramark representatives who provided the information to Popoff and Mastaw had personal knowledge of the food items that Plaintiffs actually received. Thus, the Court will also award Plaintiffs Nelson and Moses each $250.[2]

**II.     Plaintiffs' Motions for Rule 11 Sanctions**

Plaintiffs have filed motions for sanctions pursuant to Federal Rule of Civil Procedure 11(c) against Defendants' counsel, the Michigan Attorney General's Office, and non-parties Beaulieu, Mastaw, and Popoff for filing and refusing to withdraw false affidavits. Plaintiffs contend that the Beaulieu, Mastaw, and Popoff affidavits were false because they failed to disclose that on many occasions, Plaintiffs did not receive food items and no substitutions were provided, and Defendants' counsel refused to withdraw the affidavits after being informed of their deficiencies.[3]

Rule 11 provides that by signing, filing, or submitting a pleading, written motion, or other paper, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that, among other things, "the factual contentions have

---

[2] The Court recognizes that there could be a difference between what was put on a tray and what was actually "provided" to Plaintiffs. The Court's concern in this regard, however, is satisfied by the favorable step III grievance findings. Furthermore, Defendants did not raise this issue in their briefs to the Court. *See* n. 4, *infra..*

[3] The Court concludes that Plaintiffs properly complied with the notice and safe harbor provisions of Rule 11(c)(1) and (2).

evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The rule "authorizes a court to impose sanctions if papers are filed containing statements that are not well-grounded in fact." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 332 (6th Cir. 2007) (citing 16 Moore's Federal Practice § 107.30[2][a][ii][A]). The Court's focus, therefore, is whether the conduct was "objectively unreasonable" or whether Defendants' counsel lacked a reasonable basis for the facts asserted in the submitted affidavits. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014). "Rule 11 sanctions are warranted if the attorney's conduct was unreasonable under the circumstances." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 833 (6th Cir. 2005).

Initially, the Court notes that to the extent Plaintiffs seek sanctions under Rule 11 against Beaulieu, Mastaw, and Popoff based on the affidavits they submitted, their motion is without merit because Rule 11 "applies only to attorneys and unrepresented parties." *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008) (citing Fed. R. Civ. 11(a) and (c)); *Stephens v. Jones*, No. CIV-10-166-D, 2011 WL 4588909, at *2 (W.D. Okla. June 3, 2011) (holding that Rule 11 did not apply to the filer of a special report because it was not a party to the litigation). Because Beaulieu and Mastaw are not parties to the instant litigation, they are not subject to sanctions under Rule 11.

With regard to Defendants' counsel and the Michigan Attorney General's office, Plaintiffs argue that the Beaulieu, Mastaw, and Popoff affidavits were fraudulent because they omitted information showing that, on numerous occasions, the meals that Plaintiffs received were missing food items listed on the Ramadan menu, for which substitute food items were not provided. Plaintiffs further argue that even after they notified Defendants' counsel through affidavits and other court filings that the affidavits were false and/or inaccurate, Defendants' counsel refused to withdraw the affidavits. Plaintiffs contend that Defendants' counsel failed to conduct a reasonable pre-filing inquiry before filing the July 7, 14,

21, and 28, 2014 submissions and affidavits because counsel should have gone beyond the information provided by Aramark and consulted grievance coordinators and others to determine whether Plaintiffs actually received the listed food items or appropriate substitutes.

Although Plaintiffs' submissions have shown that the information contained in the Beaulieu, Mastaw, and Popoff affidavits was incomplete and inaccurate, the Court concludes that Defendants' counsel's reliance on the affidavits was not objectively unreasonable at the time they were filed. In other words, Defendants' counsel could have reasonably believed that information furnished by prison officials located at the particular facilities, which was in turn supplied by the Aramark food service directors at the facilities, would be reasonably accurate. The information and documents Plaintiffs have provided—some of which were generated after Defendants filed the Beaulieu, Mastaw, and Popoff affidavits—now shows that the information provided by Aramark was not a reliable means of verifying that Plaintiffs received the listed food items or acceptable substitutes satisfying the caloric minimum that the Court ordered. In hindsight, Defendant's counsel could have done more to ensure that the representations to the Court were accurate. However, in the Court's judgment, Plaintiffs have not shown that Defendants' counsel's filing of the Beaulieu, Mastaw, and Popoff affidavits was unreasonable under the circumstanced.[4] Thus, the Court will deny Plaintiffs' motions for Rule 11 sanctions.

Therefore, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs Heard's and Johnson's Motion to Hold Defendants in Contempt for Violating the Court's June 27, 2014 Order (dkt. # 124) is **GRANTED**. Within **thirty**

---

[4] Counsel's future reliance on information from Aramark, alone, would be unreasonable because a disconnect exists between the information Aramark provided and what actually occurred. Plaintiffs' evidence shows that for some reason—perhaps carelessness by prisoner workers in preparing the Ramadan bags/trays—Plaintiffs did not receive all of the items of food on the Ramadan menu or adequate replacement items. It seems that these problems could have been easily handled by, for example, providing a supply of food items that corrections officers could have given to Plaintiffs if a food item was determined to be missing. If a "reserve" supply were available and a prisoner could simply show that an item was missing and obtain a replacement, a prisoner would have a difficult time showing that he was shorted in his meal.

11

**(30) days** of the date of this Order, Defendants shall pay a total of $250 to each Plaintiff as compensation for damages caused by Defendants' noncompliance with the June 27, 2014 Order. Although Plaintiffs Nelson and Heard did not file a separate motion to hold Defendants in contempt, the Court includes an award of damages in favor of Plaintiffs Nelson and Moses because their affidavits provide clear and convincing evidence that Defendants also failed to comply with the Court's June 27, 2014 Order as to Plaintiffs Nelson and Moses.

**IT IS FURTHER ORDERED** that Plaintiffs' Heard's and Johnson's Motions to Supplement (dkt. ## 158, 162) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions for Rule 11 Sanctions (dkt. ## 169, 175, and 178) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Objection to Defendants' Verification Regarding Ramadan Meals (dkt. # 115) is **DISMISSED AS MOOT**.


Dated: May 4, 2015                                  /s/ Gordon J. Quist
                                                                                                   GORDON J. QUIST
                                                                      UNITED STATES DISTRICT JUDGE