UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT HEARD, WILLIAM JOHNSON,
JAMERO T. MOSES, and
ANTHONY NELSON,

         Plaintiffs,

v.

TOM FINCO, *et al.*,

         Defendants.
_____/

Case No. 1:13-cv-373

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

    **I.**    **Background**

In their original complaint, plaintiffs alleged that defendants violated their rights under the First and Eighth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.,* by failing to provide plaintiffs and other Muslim prisoners with 2,900 calories of food per day during Ramadan 2011 and 2012, as required by MDOC policy, and instead reducing their calories to approximately 1,000 to 1,500 calories per day. *See* Compl. (docket no. 1). The Court previously denied defendants' claim of qualified immunity with respect to the First Amendment claim and granted defendants' motion for summary judgment on the Eighth Amendment claim. *See* Order (docket no. 59). However, on reconsideration, the Court reinstated the Eighth Amendment claim. *See* Order (docket no. 122).

         Defendants filed an interlocutory appeal with respect to reinstatement of the Eighth Amendment claim. The Sixth Circuit affirmed, stating in pertinent part:

> The defendants argue that there is no clearly established law requiring that prisoners receive a specific number of calories per day, here between 1,000 and 1,500 calories. But it is clear that a prisoner has the clearly established right to a nutritionally adequate diet. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). And it is clear that a diet consisting of 1,000 to 1,500 calories per day can violate that right. *Welch v. Spaulding*, No. 14-2050, 2015 WL 5729466, at *4-5 (6th Cir. Sept. 30, 2015). For reasons of their own, the defendants did not submit evidence about the 2011 and 2012 Ramadan fasts, instead accepting that the prisoners were only given between 1,000 and 1,500 calories per day during those years. That number of calories, the prisoners allege, caused dizziness, weakness, dehydration, hunger pains, and loss of weight. These allegations establish a genuine issue of material fact regarding whether the plaintiffs' restricted diets during the Ramadan fasts violated a clearly established right of which a reasonable officer would have known. *Id.*; *see Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983) (per curiam). While it is not clear to us whether the plaintiffs can receive relief on both their First and Eighth Amendment claims, at this point both can go forward.

*Heard v. Finco*, No. 14-2195 (6th Cir. Dec. 21, 2015), slip op. at p. 4 (docket no. 229, PageID.1921).

The Court later allowed plaintiffs to file a supplemental complaint, which expanded their cause of action to include additional claims for Ramadan 2013 and 2014 for violations of the First Amendment, the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Civil Conspiracy. *See* Supplemental Compl. (docket no. 245); Order (docket no. 244). Finally, the RLUIPA claims have been dismissed. *See* Order of partial dismissal (docket no. 287). This matter is now before the Court on plaintiffs' motion for summary judgment (docket no. 281) and defendant Tom Finco and Brad Purves' motion for partial summary judgment (docket no. 288).

## II.   Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Plaintiffs' motion for summary judgment

#### A. Eighth Amendment and First Amendment claims

In their complaint, plaintiffs seek relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett*

3

*v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In the context of prison conditions, the Eighth Amendment's Cruel and Unusual Punishment Clause "forbids conditions that involve the 'wanton and unnecessary infliction of pain,' or are 'grossly disproportionate to the severity of the crime.'" *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "To succeed in an Eighth Amendment challenge, [p]laintiff must establish that (1) a single, identifiable necessity of civilized human existence is being denied (objective prong) and (2) the defendant prison official acted with a sufficiently culpable state of mind." *Hadix*, 367 F.3d at 525, citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the objective prong, "[t]he contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix*, 367 F.3d at 525, citing *Rhodes*, 452 U.S. at 346. Extreme deprivations are required and only deprivations denying "the minimal civilized measure of life's necessities" are grave enough to create a violation of the Cruel and Unusual Punishment Clause. *Hadix*, citing *Hudson v. McMcillian*, 503 U.S. 1, 9 (1992) and quoting *Rhodes*, 452 U.S. at 347. "Harsh and uncomfortable prison conditions do not automatically create such a violation." *Hadix*, 367 F.3d at 525. To establish an Eighth Amendment claim based upon an alleged inadequate diet, plaintiffs must demonstrate that they were denied "the minimal civilized measure of life's necessities." *Sims*

*v. Michigan Department of Corrections*, 23 Fed. Appx. 214, 216 (6th Cir. 2001), citing *Rhodes*, 452 U.S. at 347 and *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir.1982).

The subjective prong requires that the defendant acted with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The First Amendment "prohibits governments from 'abridging the freedom of speech' and 'prohibiting the free exercise' of 'religion.'" *Ward v. Polite*, 667 F.3d 727, 732 (6th Cir. 2012). The core of the guarantee of the First Amendment right to freely exercise one's religious beliefs is the right to practice any religion privately. *See Walker v. Mintzes*, 771 F.2d 920, 930 (6th Cir. 1985). "[T]he circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." *Id.* at 929. Nevertheless, prisoners have both "a constitutional right to meals that meet their nutritional needs" and "a constitutional right to be served meals that do not violate their sincerely-held religious beliefs." *Robinson v. Jackson*, 615 Fed. Appx. 310, 314 (6th Cir. 2015), citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir.2010).

### B. Discussion

The gist of plaintiffs' motion is that they are entitled to summary judgment on their Eighth and First Amendment claims because: (1) they had a constitutional right to receive more than 1,500 calories per day during the Ramadan fast in 2011 and 2012; (2) based on previous rulings in docket nos. 22, 59 and 122, "this Court found that the Sixth Circuit had established that the minimum calories to be provided to prisoners were between 2,400 to 2,600 calories"; (3) this Court previously deemed 2,350 to 2,594 calories per day to be sufficient; and, (4) plaintiffs are entitled to summary judgment on both their constitutional claims because they received only about 1,600 calories per day during Ramadan 2011 and 2012.

Plaintiffs' motion for summary judgment should be denied. As an initial matter, the Sixth Circuit has not established a minimum number of calories to be served to a prisoner, explaining in *Colvin*, 605 F.3d 282 that:

> This court has previously held that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Alexander v. Carrick*, 31 Fed.Appx. 176, 179 (6th Cir.2002). "If the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id.*

*Colvin*, 605 F.3d at 290.

Rather than adopting a specific number of calories, the Sixth Circuit has recognized that the adequacy of a religious diet presents a multi-faceted issue of fact:

> In *Colvin*, we held that it was clearly established in the First Amendment context that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." 605 F.3d at 290 (quoting *Alexander v. Carrick*, 31 Fed.Appx. 176, 179 (6th Cir.2002)). A number of other circuits have similarly recognized that "[i]nmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987); *see also Nelson v.*

*Miller*, 570 F.3d 868, 879-80 (7th Cir.2009); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir.2003). In *Colvin*, a prison chaplain mistakenly refused the plaintiff's application for a kosher diet; as a result, the prisoner was limited to eating only fruit for 16 days. *Colvin*, 605 F.3d at 291. While noting that the case "presents a clos[e] call regarding whether Colvin received food sufficient to sustain him in good health," we ultimately granted the chaplain qualified immunity because Colvin failed to point to any evidence that the chaplain acted unreasonably or knowingly, and the chaplain "worked as quickly as possible to ensure that Colvin received kosher meals" once the mistake was discovered. *Id.* (alteration and internal quotation marks omitted).

In *Cunningham I* [*Cunningham v. Jones*, 567 F.2d 653, 656-59 (6th Cir. 1977)], a prisoner in solitary confinement was given only one meal per day for 15 days. In the absence of any proof as to the calorie count of that meal, we could not determine whether this one meal per day "was sufficient to maintain normal health" so as to comply with the Eighth Amendment, and remanded the case to the trial court to determine the nutritional content of that meal. *Cunningham I*, 567 F.2d at 660. Although Judge Edwards's opinion observed that "sedentary men on the average need 2000 calories or more to maintain continued health," *id.* at 657, it did not clearly establish a minimum caloric requirement. On appeal after remand, the jail cook estimated that the caloric content of the single meals was between 2,000 and 2,500 calories. *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir.1982) (*Cunningham II*). On that evidence, we affirmed the district court's dismissal of the claim, finding that 2,000 to 2,500 calories per day "was sufficient to maintain normal health for the 15 days involved." *Id.*

[Plaintiff prisoner] had a clearly established right to a nutritious diet during Ramadan. While we should avoid "defin[ing] clearly established law at a high level of generality," *Plumhoff*, 134 S.Ct. at 2023, we also decline to define nutritional adequacy in the First Amendment context in terms of specific daily caloric requirements. This is because nutritional adequacy is a multi-factored concept. Accordingly, the question of whether a prison official has knowingly provided a nutritionally inadequate diet is a fact-specific inquiry that requires consideration of, inter alia, daily caloric content, duration of the diet, and the nutritional needs of the prisoner.

*Welch v. Spaulding*, 627 Fed. Appx. 479, 482-83 (6th Cir. 2015), *cert. denied* (U.S. Oct. 3, 2016).

As discussed, plaintiffs previously alleged that they received 1,000 to 1,500 calories per day during Ramadan 2011 and 2012. In support of their motion, plaintiffs rely on their allegations and the Sixth Circuit's statement that based on these allegations, "[I]t is clear that a

7

prisoner has the clearly established right to a nutritionally adequate diet. . . And it is clear that a diet consisting of 1,000 to 1,500 calories per day *can* violate that right." *Heard*, No. 14-2195, slip op. at p. 4 (emphasis added). Plaintiffs also rely on the deposition of defendant Purves, in which he stated that prisoners were being provided "the equivalent of two meals worth of calories" per day (docket no. 282, PageID.2231), that lunch calories were not being provided to prisoners fasting for Ramadan (*id.*), and that the average daily calorie intake at the MDOC was roughly 2,600 calories (*id.*). In addition, plaintiffs rely on the deposition testimony of MDOC dietician Barbara Anderson. Although Dietician Anderson never calculated how many calories were on the breakfast and dinner menus for Ramadan, she did testify that from 2010 through 2014, prisoners participating in Ramadan "were required to get the same calorie intake as a general population inmate." Anderson Dep. (docket no. 281-5, PageID.2214-2215).

In response to this motion, defendants rely on the affidavit of another dietician, Patricia Willard, and other deposition testimony of Dietician Anderson. In her affidavit, Ms. Willard stated that she has been a registered dietician for the MDOC for 30 years, and that her responsibilities include "evaluating prisoners with medical nutritional concerns, recommending and counseling prisoners in nutritional care plans, writing therapeutic diet menus, recommending and evaluating the medical necessity of a therapeutic diet order and providing technical assistance to the MDOC Food, Service program and Health Care staff in the area of medical nutritional therapy." Willard Aff. (docket no. 294-5, PageID.2322-2323). In 2011 and 2012, the MDOC used a tool known as "Nutrionist Pro™" [sic] software to assist in menu development. *Id.* at PageID.2323. According to Dietician Willard, this software, which was developed in 1982, provides "a thorough analysis of diets, menus and recipes," and is used in several states to assist in planning nutritional

8

(including Ohio, Kentucky, Tennessee, New York and Illinois). *Id.* Dietician Willard further stated that:

> I have evaluated the 2011and 2012 Statewide Standard Ramadan Menus and determined the menus failed to meet the estimated caloric needs per the 2010 Dietary Guidelines for Americans. The 2010 Dietary Guidelines indicate an estimated calorie need of 2000 calories to 2800 calories for sedentary to moderately active men, 19 years to 51+ years of age. The 2011 Ramadan menu provided a range of 1767 to 1810 calories per day, based on a two-week average. The 2012 Ramadan menu provided an average of 1756 calories per day, based on a two-week average.

*Id.* Defendants also refer to other deposition testimony by Dietician Anderson that the daily number of calories the MDOC reportedly provided during Ramadan 2011 (i.e., 1803 calories for 30 days) "would be sufficient for many prisoners" and provided during Ramadan 2012 (i.e., 1756 calories for 28 to 30 days) would not be harmful to "[m]ost people eating that number of calories." Anderson Dep. (docket no. 294-6, PageID.2326).

In order to prevail on a motion for summary judgment, each of the four plaintiffs must demonstrate that defendants Finco and Purves knowingly provided them a nutritionally inadequate diet. *See Welch*, 627 Fed. Appx. at 483. While plaintiffs have presented some evidence with respect to meals provided during Ramadan 2011 and 2012, questions of fact exist with respect to each plaintiff's daily caloric content, the duration of the diet, and their nutritional needs during that time. *Id.* In this regard, the Court notes that plaintiffs have not established the threshold issue of the calories they received during Ramadan 2011 and 2012. Accordingly, plaintiffs' motion for summary judgment should be denied.

9

### IV. Defendants' motion for partial summary judgment

Defendants' motion for partial summary judgment is limited to the allegations in plaintiffs' supplemental complaint regarding Ramadan 2013 and 2014. *See* Defendants' Brief (docket no. 289, PageID.2254).

#### A. Qualified immunity

Defendants contend that they are entitled to summary judgment on the affirmative defense of qualified immunity. Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The dispositive question is whether the violative nature of the particular conduct at issue in the lawsuit is clearly established. *See Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308 (2015). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Carroll v. Carman*, -- U.S. --, 135 S. Ct. 348, 350 (2014). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll*, 135 S. Ct. at 350.

When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with

10

facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* To meet his burden on summary judgment, a plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

        1.        **Plaintiffs' claims under the Eighth and First Amendments**

Defendants contend that they are entitled to qualified immunity because the law was not clearly established such that reasonable officials in defendants' positions would believe that providing prisoners with 2,350 calories a day for 30 days violated their First and Eighth Amendment rights during Ramadan 2013 and 2014. As discussed in § III.B., *supra*, the Constitution does not mandate a minimum daily caloric content for inmates. However, this Court did conclude that the 2013 Ramadan meal plan which provided prisoners "between 2,350 and 2,594 calories per day" was "sufficient to satisfy Defendants' constitutional obligation to provide Plaintiffs with a diet nutritionally adequate for the maintenance of normal health." Order of Clarification (docket no. 22). Defendants have provided an affidavit from Dietician Willard that the 2013 Ramadan menu "provided a range of 2361 to 2618 calories per day, based on a two-week average," and that the 2014

11

Ramadan menu "provided a range of 2711 to 2721 calories per day, based on a two-week average." Willard Aff. at PageID.2283.

Plaintiffs contend that there is an issue of fact regarding the sufficiency of the calories they received. Heard testified that he lost weight during Ramadan 2013, and that he had "similar symptoms" as described during Ramadan 2011 and 2012 of dizziness, feeling lethargic and hunger pains. Heard Dep. (docket no. 298-1, PageID.2357). Heard experienced the same symptoms during Ramadan 2014. *Id.* at PageID.60. Johnson testified that during Ramadan 2013, he suffered from "[h]eadaches, dizziness . . . faint, weakness, and not being able to work out." Johnson Dep. (docket no. 298-1, PageID.2362). Johnson also stated that he lost ten pounds during Ramadan 2014, and suffered from "headaches, dizziness, weakness, [and] a lack of energy." *Id.* at PageID.2363. Moses testified that during Ramadan 2013 he lost 18 pounds since the last time he had been weighed in February 2013, and suffered from dizziness and headaches. Moses Dep. (docket no. 298-1, PageID.2365, 2368). Moses also testified that during Ramadan 2014 he suffered from weight loss and dizziness. *Id.* at PageID.2366. Nelson testified that during Ramadan 2013 he lost 10 to 15 pounds and suffered from dizziness. Nelson Dep. (docket no. 298-1, PageID.2371). Finally, Nelson testified that in Ramadan 2014, he lost "close to 30 pounds," apparently due to the amount of fruits and vegetables in the menu, and that he suffered from hunger pains, "headaches, nausea, dizziness, [and] lacking a pleasant experience that came with Ramadan . . ." *Id.* at PageID.2373-2375. Based on this testimony, plaintiffs claim their symptoms during Ramadan 2013 and 2014 were similar to their symptoms experienced during Ramadan 2011 and 2012, even though they were receiving, on average, significantly more calories per day in 2013 and 2014. Whether the amount of calories provided in 2013 and 2014 was sufficient presents an issue of fact to be decided by the jury.

Defendants' qualified immunity claim is based upon the fact that the calories provided in 2013 and 2014 exceeded the amount of calories found to be sufficient in the Court's July 13, 2013 Order of Clarification. The undersigned disagrees. The Court's Order of Clarification referred to a minimum number of calories to be provided per day. In this regard, the Court's April 29, 2014 Order for contempt stated in pertinent part:

1. Defendants violated this Court's July 13, 2013 Order of Clarification on several occasions during the 2013 Ramadan observance by providing Plaintiffs with fewer than 2350 calories each day, contrary to Defendants' own representations to the Court;

2. The Court's May 13, 2010 was clear and unambiguous in requiring Defendants to provide Plaintiffs 2350 calories per day[.]

Order of Contempt (docket no. 70).

In an affidavit executed prior to the contempt order, Mr. Purves stated that during Ramadan 2013, "[t]he calorie counts provided by Nutritionist Pro™ show an average daily count of 2,361.246 calories per day." Purves Aff. (docket no. 25-3, PageID.234). The Court notes that this is consistent with the Menu Template Report, which states that the "Avg. Daily Kcals" was 2361.246. Menu Template Report (docket no. 25-3, PageID.235). While the average daily calorie count exceeded the 2,350 calories per day deemed sufficient by the Court, the actual calorie count for certain days fell below that minimum amount (*see*, *e.g.*, Tuesday Week 1 (2146.785 calories), Thursday Week 1 (2243.915 calories), and Saturday Week 1 (2160.465 calories)). *Id.* at PageID.237-238. Given this record, defendants cannot rely on the daily amount of calories cited in the Court's Order of Clarification, because the evidence presented by defendants did not establish that they provided at least 2,350 calories during each day of Ramadan 2013 and 2014. Rather, defendants' evidence presented for Ramadan 2013 and 2014 established that the MDOC provided,

on average, at least 2,350 calories per day as calculated over a two-week period. *See* Willard Aff. at PageID.2283.

Genuine disputes of material fact preclude an entry of summary judgment on a defense of qualified immunity. *King v. Taylor*, 694 F.3d 650, 664 (6th Cir. 2012). *See Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) ("if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper"). Accordingly, defendants' motion should be denied with respect to plaintiffs' Eighth and First Amendment claims arising from Ramadan 2013 and 2014.

### 2. Plaintiffs' claim under the Equal Protection Clause

Defendants also contend that they are entitled to qualified immunity because the law was not clearly established such that reasonable officials in defendants' positions would believe that providing prisoners with 2,350 calories a day for 30 days would violate their rights under the Equal Protection Clause of the Fourteenth Amendment. Based on this record, the Court concludes that defendants are entitled to qualified immunity with respect to the Equal Protection claim, because no constitutional right was violated. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (internal quotation marks omitted).

Here, plaintiffs' Equal Protection claim is based upon allegations that they were treated differently than similarly situated Jewish prisoners:

    85.    During Jewish Passover and Seder, prisoner participants receive adequate meals that are prepared in accordance with their dietary regimen.

    86.    Defendants did not reduce Jewish fast participants' menu below civilized norms.

    87.    Defendants discriminated against Plaintiffs because Plaintiffs are Muslim, in violation of the 14th Amendment of the U.S. Constitution during the 2013 and 2014 Ramadan.

Plaintiffs' Supplemental Compl. (docket no. 245, PageID.2030).

In *Small v. Secretary Pennsylvania Department of Corrections*, 592 Fed. Appx. 62 (3d Cir. 2014), the Court rejected a similar Equal Protection claim raised by a Muslim prisoner, concluding in that case that the plaintiff (Small) failed to demonstrate that Muslim inmates observing Ramadan were similarly situated to Jewish inmates observing two one-day fasts:

> "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As such, we found no equal protection violation in *DeHart v. Horn*, 390 F.3d 262, 272 (3d Cir.2004), because the plaintiff, a Buddhist inmate, failed to prove that he was similarly situated to Muslim and Jewish inmates regarding his religious dietary restrictions. DeHart was not similarly situated because his proposed diet imposed a greater burden on the prison than Muslim and Jewish inmates' diets. *Id.* Thus, although the prison treated DeHart differently, it did not violate the Equal Protection Clause.
>
> The same is true here. The two Jewish fasting days Small identified are not comparable to Ramadan. As the Magistrate Judge noted, Ramadan is much longer, involves more logistical challenges, and ends with a communal feast. Therefore, inmates seeking to participate in Ramadan are not similarly situated to inmates seeking to participate in the Jewish fasting days, and the prison did not violate the Equal Protection Clause by treating such inmates differently. Under *DeHart*, summary judgment for the defendants was appropriate.

*Small*, 592 Fed. Appx. at 64 (3d Cir. 2014).

The reasoning in *Small* is applicable here. In their supplemental complaint, plaintiffs allege that Ramadan "is not a fast in the sense of not eating for 30 consecutive days," that they "fast during daylight hours of the Arabic Lunar month of Ramadan," that they "abstain[] from food and liquid during daylight hours," and that the "[o]nce the sun sets, Muslims consume an adequate meal that meets the Dietary Guidelines for Americans." Suppl. Civil Compl. at PageID.2022-2023. As an initial matter, Passover does not involve this type of fast. The dietary restriction for an observant Jew during Passover involves not eating *khametz* (e.g., breads, cakes and pasta) for seven days.[1] With respect to fasting, Judaism includes two major fast days[2] and additional minor fast days.[3] The fact that both Jews and Muslims observe fast days does not make them similarly situated. As the district court in *Small* aptly noted, "[t]o say that the two observances are similarly situated because both involve fasts is simplistic." *Small v. Wetzel*, No. 3:12-CV-83, 2014 WL 295714 at *2 (W.D. Pa. Jan. 24, 2014), *affirmed* 592 Fed. Appx. 62 (3d Cir.). Other courts have concluded that Muslim inmates and Jewish inmates were not similarly situated for purposes of Equal Protection claims simply because they had distinctive religious diets which involved fasting or dietary restrictions. *See, e.g., Robinson v. Jackson*, No. 1:14-CV-115, 2014 WL 4988152 at *5 (S.D. Ohio Oct. 6, 2014),

---

[1] "Bread products [*khametz*] are forbidden during all eight days of the holiday (seven days in Israel). . . . *Khametz* is any foodstuff containing flour that has fermented (such as breads, cakes, and pasta), and dough made from wheat, barley, rye, spelt, and oats." Rabbi Joseph Telushkin, *Jewish Literacy* at 642 (1991).

[2] "On the 'major' fast days, Yom Kippur and Tisha Be-Av . . ., food is forbidden from the eve of the fast day to the following evening." Telushkin, *supra*, at 657-58.

[3] "The minor fast days do not commemorate 'minor' events in Jewish history. They are called minor because they are only halfday fasts; food is forbidden only from dawn till evening." Telushkin, *supra*, at 657-659. "[T]he three minor fasts associated with the Temple's destruction are kept only by very observant Jews." *Id.* at 658-59. "Another minor fast falls on the day preceding Purim." *Id.* at 659. "A final fast is obligatory for only a small percentage of Jews, firstborn children who are males. . . This day is called, logically enough, the Fast of the First-born, and it is observed the day before Passover." *Id.*

*affirmed* 615 Fed. Appx. 310 (6th Cir. 2015) (where plaintiff prisoner alleged that the defendant violated the Equal Protection Clause "by granting kosher meals to Jewish inmates while denying Halal meals to Muslim inmates," the court rejected the claim in part stating "these classes of inmates (*Jewish v. Muslim*) are not similarly situated because they differ greatly in number") (emphasis in original); *Hearn v. Kennell*, No. 07-1235, 2009 WL 3460455 at *6 (C.D. Ill. Oct. 22, 2009), *affirmed*, 433 Fed. Appx. 483 (7th Cir. 2011) ("[T]he plaintiff [a Muslim inmate] is not similarly situated to the Jewish inmates. The dietary restrictions of Muslims are not the same as those of the Kosher diet for Jewish inmates. Accordingly, different steps must be taken to accommodate the various dietary restrictions.").

Furthermore, plaintiffs do not present any reasoned argument to support their claim that a Muslim inmate observing Ramadan is similarly situated to a Jewish inmate observing Passover or a fast day. Rather, plaintiffs present cursory arguments which refer to the calories which they believe are provided to "the regular prison population, including Jewish prisoners" during Ramadan:

> Using the rational basis test, there is no legitimate reason to provide the regular prison population, including Jewish prisoners, 2,600 calories daily while Plaintiffs received approximately 2,350 calories daily or less during Ramadan 2013 and 2014. It would not have burdened Defendants to provide the same 2,600 calories daily to Plaintiffs during Ramadan 2013 and 2014. Furthermore, Defendants have failed to state a legitimate reason as to why Plaintiffs should have received 2,350 calories daily or less instead of the 2,600 calories provided to all other prisoners.

Plaintiffs' Response (docket no. 298, PageID.2346). In summary, plaintiffs have not demonstrated that defendants violated the Equal Protection Clause. The absence of a constitutional violation entitles defendants to qualified immunity on this claim. *See Pearson*, 555 U.S. at 232-33; *Bishop*, 636 F.3d at 765.

### 3. Plaintiffs' claims against defendant Purves for Ramadan 2014

Defendant Purves seeks qualified immunity with respect to plaintiffs' claims for Ramadan 2014 because he did not have the requisite personal involvement to be liable under 42 U.S.C. § 1983. Although defendants have raised this claim in the context of qualified immunity, it appears to the Court that the doctrine of qualified immunity does not address Mr. Purves' claim that he lacked personal involvement in Ramadan 2014. By its very nature, the doctrine of qualified immunity involves personal involvement because the doctrine "gives government officials breathing room to make reasonable but mistaken judgments," *Carroll*, 135 S. Ct. at 350, while "performing discretionary functions," *Harlow*, 457 U.S. at 818. Nevertheless, Mr. Purves is entitled to summary judgment for any claims arising in Ramadan 2014 due to his lack of personal involvement.

"Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011). "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Here, there is no evidence that Mr. Purves was involved in any decisions made with respect to Ramadan 2014. At his deposition, Purves testified that his position as Food Service Program Manager was eliminated on December 7, 2013. Purves Dep. (docket no. 289-3, 2275). Since that time, he has been employed as the administrative assistant to the chief medical officer for the Bureau of Health Care Services. *Id.* at PageID.2274. There is no evidence that Mr. Purves played any role in the meals provided in Ramadan 2014, which began on June 28, 2014, more than six months after his position of Food Service Program Manager was eliminated  *See* Plaintiff's Notice to correct error (docket no. 89); Purves Dep. at PageID.2275.

Accordingly, defendant Purves is entitled to summary judgment with respect to all claims arising from Ramadan 2014.

### B. Civil conspiracy claim

Finally, defendants seek summary judgment on plaintiffs' civil conspiracy claim. "A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

> Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Conclusory allegations of a conspiracy are not sufficient to state a claim under § 1983. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).

Defendants contend that "[t]he Plaintiff [sic] failed to make any specific allegations against the Defendants in either 2013 or 2014." Defendants' Brief (docket no. 289, PageID.2265). *See Guitierrez*, 826 F.2d at 1538. However, defendants do not address the allegedly defective allegations or point out how those allegations fail to meet the pleading requirements for a civil conspiracy claim. In their reply brief, defendants present conclusory statements (e.g., "[t]he Plaintiffs utterly failed to show that the Defendants engaged in a civil conspiracy," "[t]he Plaintiffs must plead a civil conspiracy with particularity," and "[t]he Plaintiffs have done nothing more than make vague allegations as to the alleged civil conspiracy"). Defendants' cursory briefing fails to address the legal issue of whether plaintiffs alleged the necessary elements of a civil conspiracy

under § 1983. " It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). This being said, the Court concludes that there could be no civil conspiracy between defendants Finco and Purves related to Ramadan 2014 because, as discussed in § IV.A.3, Mr. Purves was not the Food Service Program Manager during Ramadan 2014. Accordingly, defendants' motion should be denied with respect to Ramadan 2013 and granted with respect to Ramadan 2014.

### V. Recommendation

For the reasons set forth above, I respectfully recommend that plaintiffs' motion for summary judgment (docket no. 281) be **DENIED**.

I further recommend that defendants' motion for partial summary judgment (docket no. 288) be **GRANTED** with respect to plaintiffs' Eighth and Fourteenth Amendment claims against defendant Purves arising from Ramadan 2014, **GRANTED** with respect to plaintiffs' Fourteenth Amendment Equal Protection claims arising from Ramadan 2013 and 2014, **GRANTED** with respect to plaintiffs' civil conspiracy claim arising from Ramadan 2014, and **DENIED** in all other respects.

Dated: November 4, 2016        /s/ Ray Kent
                               RAY KENT
                               United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).